Rollin A. Ransom, SBN 196126
rransom@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT; SONY MUSIC ENTERTAINMENT US LATIN LLC; ZOMBA RECORDING LLC; ARISTA MUSIC; LA FACE RECORDS LLC; RECORDS LABEL, LLC; and THE CENTURY MEDIA FAMILY, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> GYMSHARK LIMITED and DOES 1-10, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br><br> 1. **DIRECT COPYRIGHT INFRINGEMENT;** <br><br> 2. **CONTRIBUTORY COPYRIGHT INFRINGEMENT;** <br><br> 3. **VICARIOUS COPYRIGHT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Sony Music Entertainment; Sony Music Entertainment US Latin LLC; Zomba Recording LLC; Arista Music; La Face Records LLC; Records Label, LLC; and The Century Media Family, Inc. (collectively, "Plaintiffs" or "Sony Music"), by and through their attorneys, allege as follows:

## INTRODUCTION

1.      Plaintiff Sony Music Entertainment is one of the world's largest music entertainment companies.  Both directly and through its affiliated companies and record labels, including the other Plaintiffs, Sony Music Entertainment produces, manufactures, distributes, markets, sells and licenses some of the most iconic and popular sound recordings of all time, as well as many of today's biggest hits

2.      Defendant Gymshark Limited ("Gymshark") is a fitness apparel and accessories manufacturer and online retailer.  Gymshark has achieved its success by infringing sound recordings and musical compositions belonging to a number of different content owners, including Plaintiffs' copyrighted sound recordings, on a massive scale.

3.      Gymshark has largely eschewed traditional advertising, relying instead upon promotion of Gymshark's products through social media sites such as Instagram, TikTok, and Facebook.  Gymshark's primary use of these platforms is to post videos showing use of Gymshark's products.  These videos feature popular sound recordings as an integral part of the presentation; indeed, there is typically no speaking or sound *other than* the music integrated into the video.

4.      While these social media "commercials" have been instrumental to Gymshark's success, Gymshark has not paid for the privilege to use the sound recordings that are featured in them.  As to Plaintiffs alone, Gymshark has misappropriated *hundreds* of the most popular and valuable sound recordings in the market, using those creative works to drive massive sales to Gymshark without any compensation to Plaintiffs.  These works include sound recordings featuring such chart-topping and award-winning artists as Beyoncé, Britney Spears, The

Chainsmokers, Justin Timberlake, A$AP Rocky, Travis Scott, Harry Styles, Usher, Noah Cyrus, and Calvin Harris.

5.     Gymshark created many of these videos itself.   As to others, Gymshark partnered with "influencers"—private individuals who created the videos and posted them on their own pages, while at the same time providing them to Gymshark to repost on Gymshark's social media pages.   On information and belief, Gymshark compensates these influencers with free product and/or a monetary payment, sometimes tied to Gymshark's sales of the product(s) featured in the influencer's videos.

6.     Plaintiffs' investment in recorded music is protected by copyright law, which grants the copyright owner the exclusive right to, among other things, reproduce, distribute, and create derivative works of copyrighted works, and to publicly perform sound recordings by means of a digital audio transmission.   An important portion of Plaintiffs' return on their investment in recorded music, which they share with their exclusive recording artists, comes from licensing recordings and music videos to others who use Plaintiffs' works in videos, television shows, commercials, and on social media, just as Gymshark has done.   Indeed, Gymshark's use of Plaintiffs' sound recordings is precisely the type of commercial use upon which Plaintiffs have built their robust licensing business.

7.     Gymshark's conduct, in which it takes and exploits Plaintiffs' valuable intellectual property without any compensation to Plaintiffs or their artists, has caused Plaintiffs substantial and irreparable harm.   Plaintiffs bring this action to obtain redress for Gymshark's infringement of Plaintiffs' valuable rights and to prevent further violations of those rights.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

10.    The Court has personal jurisdiction over Gymshark, including pursuant to Federal Rule of Civil Procedure 4(k)(2), for at least the following reasons: (1) Plaintiffs' claims arise under federal copyright law; (2) Gymshark actively uses U.S.-based social media platforms in connection with its massive infringement of Plaintiffs' copyrights, and streams infringing videos through these social media platforms to consumers in the United States; (3) Gymshark accomplishes its infringement, in part, by partnering with and compensating influencers located in the United States, including, on information and belief, in this District, for purposes of creation, reproduction, distribution, and performance of the infringing videos; (4) Gymshark targets and attracts a substantial number of customers in the United States, and its infringement is an essential means of reaching, soliciting, and selling to these customers; (5) Gymshark maintains substantial business operations in the United States, on information and belief employing over one hundred people in the United States, including at its offices in Denver, Colorado, as well as within this District (in which, on information and belief, Gymshark maintains and operates its U.S.-based distribution center); and (6) Gymshark has operated "pop-up" stores throughout the United States, including in this District, featuring many of the "influencers" who appear in Gymshark's infringing videos.

## THE PARTIES

11.    Plaintiff Sony Music Entertainment ("SME") is a Delaware general partnership, the partners of which are citizens of New York and Delaware.  SME's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York, and it has substantial business operations in this District.

12.    Plaintiff Sony Music Entertainment US Latin LLC ("Sony Latin") is a Delaware limited liability company with its principal place of business at 3390 Mary St., Suite 220, Coconut Grove, Florida.

13. Plaintiff Zomba Recording LLC ("Zomba") is a Delaware limited liability company with its principal place of business at 25 Madison Avenue, New York, New York.

14. Plaintiff Arista Music ("Arista Music") is a New York partnership with its principal place of business at 25 Madison Avenue, New York, New York.

15. Plaintiff LaFace Records LLC ("LaFace") is a Delaware limited liability company with its principal place of business at 25 Madison Avenue, New York, New York.

16. Plaintiff Records Label, LLC ("Records Label") is a Delaware limited liability company with its principal place of business at 25 Madison Avenue, New York, New York.

17. Plaintiff The Century Media Family, Inc. ("Century Media") is a California corporation with its principal place of business at 25 Madison Avenue, New York, New York.

18. On information and belief, Defendant Gymshark is a United Kingdom corporation with its headquarters in Solihull, England, and substantial operations in the United States.

19. On information and belief, Defendants Does 1 through 10 own, operate, or are employees of Gymshark, and/or are otherwise responsible for and proximately caused and are causing the harm and damages alleged in this Complaint. Plaintiffs are presently unaware of the true names and/or the involvement of the defendants sued herein by the fictitious designations Does 1 through 10, and for that reason sue them by those designations. Plaintiffs will seek leave to amend this pleading to identify those defendants when their true names and involvement in the infringements and other wrongful conduct hereinafter described are known.

**PLAINTIFFS' SOUND RECORDINGS**

20.    Sony Music is home to some of the world's most distinguished record labels, including Columbia Records, RCA Records, Sony Nashville, Arista Records, and Epic Records, through which it contracts with its world-class recording artists.

21.    Sony Music's current and former artists include Adele, Beyoncé, Billy Joel, Bruce Springsteen, Dolly Parton, Elvis, Future, Camila Cabello, Doja Cat, Johnny Cash, Justin Timberlake, Khalid, Lil Nas X, Luke Combs, Mariah Carey, Michael Jackson, Miley Cyrus, The Chainsmokers, Usher, Whitney Houston, and Yo-Yo Ma.

22.    In addition to the well-known artists identified above, Sony Music invests heavily in signing and developing new artists, and in marketing and promoting their recordings.  Sony Music generally invests on the front end of an artist's career—through advances, recording, marketing, creative services, promotion, and more—betting that it can help the artist, and the artist's recordings, achieve success.  Sony Music *might* see a return on its investment if an artist's recordings are commercially successful.  However, Sony Music's financial incentives to invest in artists and their music flow directly from the protections afforded by copyright.

23.    Sony Music exploits its sound recording copyrights through physical sales and digital distribution (such as downloads), as well as through licensing to third parties.  Licensing the use of sound recordings—including for use in internet-based media—is a substantial revenue driver for all music companies, including Sony Music, especially over the last decade.

24.    Sony Music has licensing agreements with many types of companies.  For example, a license to Peloton allows it to use Sony Music's sound recordings to create themed fitness class videos.  Sony Music has also licensed its sound recordings to various fitness apparel and accessories companies that compete with Gymshark, including without limitation Nike and Under Armour, as well as to companies in related markets, often including the right to use the Sony Music content on the internet.

Indeed, Sony Music regularly licenses its sound recordings for use in commercials, films, video games, and other audiovisual works, including advertisements that are distributed and publicly performed on company websites and on social media via the internet.

25.     Those who use Sony Music's sound recordings in this manner are obligated to follow copyright laws and obtain permission from Sony Music.

### **DEFENDANTS' INFRINGING CONDUCT**

26.     Gymshark is a fitness apparel and accessories brand, manufacturer, and online retailer valued at over $1.4 billion.  The company is based in the United Kingdom, but "supported by millions of highly engaged social media followers and customers in 131 countries."[1] Key to Gymshark's success has been its concerted social media marketing—principally on the popular Instagram, TikTok, and Facebook apps and websites—to increase Gymshark's reach, caché, brand value, and sales.

27.     Gymshark's videos on these social media sites (the "Gymshark Videos") typically depict athletes wearing one or more of Gymshark's products while exercising or dancing, synchronized to an audio track of a popular commercially-available sound recording.  The audio track generally runs the full length of the Gymshark Videos and includes the most familiar portion of the sound recording.

28.     Gymshark created many of the Gymshark Videos itself, with the knowledge that the sound recordings it used were unlicensed.  Other Gymshark Videos were initially created by social media influencers—third parties whom Gymshark compensates by, among other things, providing free, new, or yet-to-be-released products that the influencers can feature in their videos and/or by providing monetary compensation either directly or through commissions and/or rebates (though, contrary to FTC guidelines, the influencers often do not disclose that they receive compensation

---

[1] *About Us*, Gymshark, https://www.gymshark.com/pages/about-us (last visited July 13, 2021).

in any form).  Gymshark then actively reviewed, selected, and reposted the influencer-created videos on Gymshark's own social media pages.

29.    The Gymshark Videos often actively integrate the sound recordings into the promotional videos, including through lip-syncing and movement choreographed to the sound recording.  For example, Figure 1 below is a screen capture from a Gymshark Video promoting Gymshark's athletic wear featuring unauthorized use of the Sony Music sound recording "Ride It" by Regard.



FIGURE 1

In the video, the athletes lip-sync the opening lyrics in the clip before performing a choreographed fitness routine to Regard's "Ride It."

30.    Recognizing the importance of the music to the social media posts, the Gymshark Videos often specifically identify the featured sound recording, as shown in Figure 1 above and in the example shown in Figure 2 below, identifying Sony Music sound recording "July" performed by Noah Cyrus; that video also specifically calls out the Gymshark-branded products depicted in the video, with arrows pointing to the hat and shirt bearing the Gymshark name and stating "Look at the hat" and "Look at the top":



FIGURE 2

31.     Other Gymshark Videos bear striking similarities to traditional television advertisements.   These videos, which on information and belief were created by Gymshark with professional grade technologies, feature shots of models wearing Gymshark products, similar to a traditional television commercial for athleticwear, set to Plaintiffs' sound recordings.   For example, Figure 3 below is a screen capture from a Gymshark Video created by Gymshark featuring shots of female models wearing the "Gymshark Swim" collection at the beach and by the pool, while Sony Music's sound recording "Summer," performed by Calvin Harris, plays.



FIGURE 3

32.     Gymshark devotes substantial resources to its social media advertising efforts.  On information and belief, Gymshark identifies popular bodybuilder and other fitness-focused social media influencers, and sends them free, new, or yet-to-be-released products for the influencers to feature in their videos.

33.     Gymshark also builds more formal relationships with some social media influencers, whom Gymshark deems "Gymshark Athletes."  On information and belief, Gymshark Athletes agree to regularly post about Gymshark on their social media channels and sign exclusive agreements with Gymshark.  On information and belief, Gymshark employs at least 80 influencers as "Gymshark Athletes" with salaries ranging "anywhere from $6,000 to more than $100,000 per year…to live—and sell—the Gymshark lifestyle on social media."[2]

34.     On information and belief, in addition to the compensation that Gymshark pays influencers who provide the content that Gymshark features on its social media pages, Gymshark employs professional staff whose responsibilities include reviewing and selecting those videos and working with and overseeing the influencers with whom Gymshark partners, which includes advising on content. Indeed, partnerships with social media influencers are so important to Gymshark's business that Gymshark has announced plans to hire four full-time employees this year for their United States offices who will "act exclusively as scouts to find and manage emerging American star influencers."[3]

35.     Accordingly, and consistent with the highly promotional nature of the Gymshark Videos, many of the Gymshark Videos feature Gymshark Athletes and other influencers wearing and prominently featuring Gymshark-branded apparel, as in the examples shown in Figure 4 (featuring Sony Music's sound recording "Don't Let

---

[2] Alexandra Sternlicht, *How a Former Pizza Hut Delivery Guy Used TikTok and Instagram to Build Gymshark Into a Billion-Dollar Sportswear Brand*, Forbes (Dec. 2, 2020), https://www.forbes.com/sites/alexandrasternlicht/2020/12/02/how-ben-francis-used-tiktok-and-instagram-to-build-gymshark-into-a-billion-dollar-sportswear-brand/ (last visited July 13, 2021).
[3] *Id.*

Me Down" performed by The Chainsmokers featuring Daya) and Figure 5 (featuring Sony Music's sound recording "Let It Go (Riot Ten Remix)" performed by A$AP Ferg) below.



FIGURE 4



FIGURE 5

36.   Likewise, the Gymshark Videos routinely identify and promote the particular Gymshark apparel worn in the videos and/or specifically call out and promote other Gymshark products, services, or specials.  For example:

(a)   Figure 6 below is a screen capture from a Gymshark Video promoting "50% off" Gymshark's Adapt Camo Seamless Leggings (as worn by the athlete in the video), while Sony Music's sound recording "Booty Me Down," performed by Kstylis, plays.



FIGURE 6

(b)   Figure 7 below is a screen capture from a Gymshark Video announcing that "ALL HOME WORKOUTS ARE NOW FREE ON THE GYMSHARK CONDITIONING APP," and providing a link to the Gymshark app, while Sony Music's sound recording "Casual," performed by Doja Cat, plays.



FIGURE 7

(c)     Figure 8 below is a screen capture from a Gymshark Video announcing "Free Shipping on all stores over on gymshark.com," while Sony Music's sound recording "SexyBack," performed by Justin Timberlake, plays.



FIGURE 8

37.     Gymshark's investment in social media, and in the Gymshark Videos in particular, has been critical to Gymshark's success.  Indeed, Noel Mack, Gymshark's Chief Brand Officer, aptly described the importance Gymshark's social media:

> Instagram is a huge part of our story because of the communities
> we create, but the challenge is always how to stand out among so
> many online businesses vying for consumers' attention. . . .  We
> have been building our following organically since day one of
> the brand, six years ago.[4]

38.     And Gymshark *has* been wildly successful, largely as a result of the ubiquity and effectiveness of the infringing Gymshark Videos.  Forbes recently valued Gymshark at over $1.4 billion, and Gymshark reportedly achieved $330 million in

---

[4] *How Gymshark Mastered Instagram to Drive Instant Sales*, Marketing Week (Oct. 2018),     https://www.marketingweek.com/gymshark-instagram-black-friday-sales/ (last visited July 13, 2021).

1 sales in 2020.[5]  Gymshark also has over 7 million engaged social media followers, and
2 that number increases to "over 60[ million] followers when combined with its team of
3 'Gymshark Athletes.'"[6]

4     39.    Gymshark achieved that success through blatant, willful, and repeated
5 copyright infringement of content owned by record labels and music publishers,
6 including infringement of hundreds of Sony Music's most popular and valuable sound
7 recordings.  These Gymshark Videos use sound recordings owned or controlled by one
8 of the Plaintiffs without authorization, including widely popular recordings by some
9 of Sony Music's top recording artists.

10     40.    Attached as Exhibit A is an initial list of sound recordings of which the
11 identified Plaintiff is the sole owner or exclusive licensee in the United States of rights
12 under copyright, which rights have been infringed by Gymshark through the inclusion
13 of such sound recordings in Gymshark Videos.  Each listed sound recording is
14 registered in the United States Copyright Office, is the subject of a filed application
15 for registration with the United States Copyright Office and awaiting issuance of a
16 certificate of registration (subject to the current backlog at the Copyright Office), is
17 not a United States work, as that phrase is defined in the Copyright Act, or is a sound
18 recording fixed before February 15, 1972, and included on a schedule filed with the
19 Copyright Office pursuant to the Orrin G. Hatch-Bob Goodlatte Music Modernization
20 Act.  Plaintiffs' investigation continues, and discovery is likely to reveal additional
21 infringements; Plaintiffs intend to seek leave to amend this Complaint at an
22 appropriate time to provide an expanded list of infringed works.

23     41.    Moreover, Gymshark's infringement was clearly willful.  Among other
24 things, the social media platforms on which Gymshark posted the infringing Gymshark
25 Videos expressly state that users have no right to infringe music, particularly in
26 connection with commercial activities.

27 _____
28 [5] Sternlicht, *supra*.
[6] *How Gymshark Mastered Instagram*, *supra*.

42.     For example, the Instagram Terms of Use incorporate Music Guidelines, which are maintained in the "Legal" section of the Facebook website.  Those Music Guidelines expressly provide as follows:  "Use of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses."[7]

43.     Similarly, the TikTok Terms of Service unequivocally state that no rights are granted respecting use of sound recordings:

> NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE.[8]

44.     Moreover, in late 2020, Steph O'Neill, Gymshark's "Head of PR & Brand Partnerships," approached Sony Music for a license to use a portion of the Sony Music sound recording "The Flute Song" by recording artist Russ in connection with a video featuring Gymshark athlete Ryan Garcia, to be posted to Gymshark's social media accounts for a limited period of time.  Although this request reflected Gymshark's awareness that a license was required for use of Sony Music's sound recordings, and although Sony Music advised Gymshark that it would be willing to grant the license in exchange for compensation, Gymshark never signed a license agreement or paid a license fee to Sony Music, and instead used the sound recording without authorization and without compensating Sony Music.

## COUNT I:  COPYRIGHT INFRINGEMENT
## (AGAINST ALL DEFENDANTS)

45.     Plaintiffs incorporate paragraphs 1 through 44 of this Complaint as if fully set forth herein.

---

[7] *Terms of Use*, Instagram, http://help.instagram.com/581066165581870 (incorporating Music Guidelines) (last visited July 13, 2021); *Music Guidelines*, Facebook, https://www.facebook.com/legal/music_guidelines (last visited July 13, 2021).
[8] *Terms of Service*, TikTok, https://www.tiktok.com/legal/terms-of-service?lang=en (last visited July 13, 2021).

46.  Defendants' creation, posting/reposting and/or the streaming of the Gymshark Videos infringes Plaintiffs' copyrights.  Among other things, Defendants have unlawfully reproduced, prepared derivative works from, distributed, and/or publicly performed by means of a digital audio transmission the sound recordings listed on Exhibit A in violation of 17 U.S.C. § 106(1), (2), (3), and (6).

47.  Defendants' acts of infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

48.  As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

49.  Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

50.  Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting the infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT II:  CONTRIBUTORY INFRINGEMENT
## (AGAINST ALL DEFENDANTS)

51.  Plaintiffs incorporate paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.  As detailed above, third-party influencers who created Gymshark Videos have likewise infringed Plaintiffs' copyrights, and Defendants are liable as

contributory copyright infringers for the infringing acts of these influencers. Additionally or alternatively, Defendants are liable as contributory copyright infringers by making the Gymshark Videos available to the users and subscribers of the social media platforms referenced above.

53. By promoting and/or assisting with the creation of the infringing Gymshark Videos and/or by causing them to be copied, made available, and transmitted over the social media platforms referenced above, Defendants materially contribute to the infringing reproduction, preparation of derivative works from, distribution, and/or public performance of the Sony Music sound recordings contained in the Gymshark Videos, including but not limited to the works listed in Exhibit A. Defendants have actual and constructive knowledge of such infringement, including actual or constructive knowledge that no Sony Music-related entity has granted the rights to include Sony Music's sound recordings in such Gymshark Videos.   In addition, Defendants have induced such infringement, including by promoting such infringement through the compensation paid to Gymshark Athletes and other influencers, by reposting the infringing videos, and by calling out infringing sound recordings used in the Gymshark Videos.

54. Defendants' acts of contributory infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

55. As a direct and proximate result of Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

56. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

57.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting the contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright.

**COUNT III:  VICARIOUS INFRINGEMENT**

**(AGAINST ALL DEFENDANTS)**

58.     Plaintiffs incorporate paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     As detailed above, third-party influencers who created Gymshark Videos have likewise infringed Plaintiffs' copyrights, and Defendants are vicariously liable for the infringing acts of these influencers.  Additionally or alternatively, Defendants are liable as vicarious copyright infringers by making the Gymshark Videos available to the users and subscribers of the social media platforms referenced above.

60.     Defendants have and have exercised the right, ability, and authority to control and supervise the placement of Gymshark Videos on the social media platforms referenced above.  Defendants also have the ability to remove Gymshark Videos from each platform.  Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works from, distribution, and/or public performance of the Sony Music sound recordings contained in the Gymshark Videos, including but not limited to the works listed in Exhibit A, including (among other financial benefits) increased brand recognition and product sales.

61.     Defendants' acts of vicarious infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

62.     As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to

be proven at trial, pursuant to 17 U.S.C. § 504(b).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

63.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

64.    Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting the vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)    for a preliminary and permanent injunction requiring that Defendants, and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created;

(b)    for Plaintiffs' actual damages and Defendants' profits from infringement, pursuant to 17 U.S.C. § 504(b), in amounts to be proven at trial, or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), for statutory damages up to the maximum amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

(c)    for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5) and otherwise;

(d)     for prejudgment and post-judgment interest; and

(e)     for such other and further relief as the Court may deem just and proper.

Date:  July 15, 2021

By: */s/ Rollin A. Ransom*
Rollin A. Ransom
Attorneys for Plaintiffs

# **DEMAND FOR JURY TRIAL**

Pursuant to Local Rule 38-1 and Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

Date:  July 15, 2021

By: */s/ Rollin A. Ransom*
Rollin A. Ransom
Attorneys for Plaintiffs